PURTLE ET AL., RESPONDENTS, *v.* CASEY ET AL., AP-
PELLANTS.

[Argued October 12, 1891.  Decided November 23, 1891.]

INSTRUCTIONS — *Fraud.* — In an action for the price of lumber sold, where fraud on
    the part of the defendants is neither pleaded, proved, nor attempted to be
    proved, it appearing that the lumber had been shipped to the defendants under
    an arrangement, as to the nature of which the evidence was conflicting, it is
    error to instruct the jury to the effect that if they find that the defendants
    caused or permitted the lumber in question to be shipped to the defendant C.,
    for the purpose of delaying or defrauding the creditors of B., or to prevent
    them from collecting their claims, then the defendants will not be allowed to
    prove these facts in their defense, and the transaction as between plaintiffs and
    defendants is good and valid, as such instruction is unauthorized and prejudicial.

*Appeal from Second Judicial District, Silver Bow County.*

Action for goods sold and delivered.  The cause was tried
before McHATTON, J.  Plaintiffs had judgment below.

Statement of the case by the judge delivering the opinion.

The complaint is for lumber, of the value of $751.56, sold
and delivered by plaintiffs to defendants at defendants' request.
The answer denies that defendants bought said lumber, or any
part of it, or that it was ever delivered to them, or that they
promised to pay for it.

Upon the trial it appeared that the plaintiffs had been selling
and shipping lumber to one W. A. Boyce, who was building
the Lizzie block in the city of Butte; that defendants were the
bondsmen of Boyce upon his contract for the erection of said
building; that Boyce was slow in his payments for the lumber;
that plaintiffs became uneasy as to Boyce's credit, and sought
to make some arrangements with the defendants for the future
shipment of lumber.  What those arrangements were is the
point of divergence between the testimony of plaintiffs and
defendants.

The plaintiffs say that, under the circumstances above set
forth, they went to the defendants, who, on account of their
position as Boyce's bondsmen, were interested in the successful
completion of the contract for the building, and that defendants
agreed that they in the future would be the purchasers of the
lumber, and would pay for the same; and that, in pursuance to

such agreement, the lumber mentioned in the complaint was sold and delivered to and received by the defendants.

On the other hand, the defendants in their evidence wholly denied this agreement. They testify that the facts were that they simply allowed plaintiffs to ship the lumber from the mill to the city of Butte in their name, or in the name of the defendant Casey. That the lumber was billed in that manner. It came to Casey, and he at once turned it over to Boyce. That the lumber belonged to Boyce, was bought by him, delivered to him, and never bought by or delivered to defendants.

Upon this point there was a direct conflict of the evidence. The jury found for the plaintiffs by a general verdict, and the District Court denied a motion for a new trial. The defendants appeal. They do not now ask this court to review the conflict of evidence above set forth, or the action of the District Court in denying the motion for a new trial on the ground of insufficiency of the evidence to sustain the verdict. They abandon that point as settled by the verdict.

But they ask us to review an instruction of the court, which is as follows: "(3) The jury are instructed that no man is allowed to take advantage of his own wrong, and if you find that the defendants caused or permitted the lumber in question to be shipped to defendant Casey for the purpose of delaying or defrauding the creditors of W. A. Boyce, or to prevent the creditors of said Boyce from the collection of their claims, then the defendants will not be allowed to prove these facts in their defense, and that the transaction as between the plaintiffs and defendants is good and valid, and you will find for the plaintiffs."

The appellants contend that the giving of this instruction was error, and that there was no evidence of fraud to justify the instruction.

The evidence upon which the instruction seems to have been based was as follows: Defendant Largey testifies: " I got the impression from Purtle's and Casey's conversation that it was arranged that he (Purtle) should ship his lumber in Casey's name, to keep it from being attached by some one else. I came away with that understanding." Largey seems to have been more of a spectator than a participant in the conversation, which was chiefly between Casey and Purtle.

Defendant Casey testifies: "Purtle came in in the first place with Mr. Largey, and said that he understood that the Montana Improvement Company was going to attach Boyce on a debt that he owed them, and he wanted to know if I would have any objection to having the lumber shipped in my name, instead of Boyce's. I said I had, and he said it was a question of protection to him. I said: 'If you put me in that position, and if anybody put a garnishment on it, I would answer it.' He said, 'Nobody will know about this, and I would be better protected;' and I said, 'If I have any business with you, you had better get Boyce.' He went down and got Boyce, and brought him up to the store. He was trying to protect, not me, but himself. When he returned with Boyce I asked Boyce if he owed the Montana Improvement Company anything. He said, to his knowledge, he did not. They were charging work and material back and forth, and he did not think he owed them a dollar. He thought they owed him instead. He stated that to Purtle, and I turned around to Purtle and said, 'What protection do you need?' and he said, 'I prefer to have it done that way.' And I said, 'Very well, you can ship that lumber in my name, if you choose.'" This was in the direct examination of Casey. In his cross-examination he went into the matter again, and further said: "Purtle said that he was afraid that Mr. Boyce was going to be garnished by the Montana Improvement Company, and would like to have the lumber shipped in my name. I told him to get Boyce. He came back with Boyce." Then follows the conversation detailed above. Casey further said: "I also stated [to Purtle] that 'if I was garnished on that lumber you would have to protect yourself.' He said: 'On the face of it, it would look all right; and I am not afraid that there would be any difficulty if I shipped this lumber in your name.' It positively was not the case that I allowed my name to be used for the express purpose and with the express understanding that it was to defeat the creditors of Mr. Boyce, nor for the protection of Mr. Purtle. Mr. Boyce stated at the time that he did not owe these people anything, and those were the only names mentioned in my presence about garnishing. Purtle said that he heard that they were going to attach the lumber that he shipped in for a claim they had

against Boyce. That was what he said was the reason he wanted to ship it in my name. I consented to it on that understanding."

Boyce testified that Purtle wanted the lumber shipped in Casey's name, lest the Montana Improvement Company should attach the lumber for a claim against him (Boyce); and that he (Boyce) told Purtle and Casey that he thought the Montana Improvement Company owed him (Boyce).

The plaintiff Purtle testified that he did not give Casey and Largey any reason why he wanted to ship the lumber in their name; that he did not state he wanted to protect himself against the Montana Improvement Company. The plaintiffs' position was that they sold the lumber to Casey and Largey; and his denial, just noticed, is in accordance with his theory and narration of the transaction.

Upon this state of the case and the evidence the instruction objected to was given. Was it error?

*F. T. McBride*, for Appellants.

The giving of the instruction in question was error. It virtually instructs the jury that the defendants have no defense, and to find for the plaintiffs. The evidence did not show that defendants had committed any wrong. Purtle's request was to protect him, Purtle, and his partner, Lynch, and not to protect Boyce, and the giving of the instruction referred to tended to mislead the jury and make the jury think that there was evidence that defendants had committed a wrong and were attempting to reap a benefit from it. Plaintiffs having originated the arrangement, and induced defendants to permit such shipment, were at least *in pari delicto* with defendants, and cannot recover any part of the property. (*Ager* v. *Duncan*, 50 Cal. 325; Chitty on Contracts, 975, 976, notes *m*, *o*; Wait on Fraudulent Conveyances, 396; *Howell* v. *Fountain*, 3 Ga. 176; 46 Am. Dec. 422, 423; *Beattie* v. *Hoyt*, 3 Mont. 140; *Knight* v. *Linzey*, 80 Mich. 396; *Birkett* v. *Chatterton*, 13 R. I. 299; 43 Am. Rep. 30; *Blasdel* v. *Fowle*, 120 Mass. 447; 21 Am. Rep. 533.) If defendants had permitted plaintiffs to ship said lumber in defendants' names for the purpose of defrauding plaintiffs' creditors, and defendants had given to plaintiffs their promissory

note in furtherance of such illegal contract, still plaintiffs could not recover on such note. The court would not lend any assistance in the furtherance of the illegal contract, and defendants would not be precluded from showing such illegality to defeat the note. (*McCausland* v. *Ralston,* 12 Nev. 195; 28 Am. Rep. 781, and cases cited.) The fact that a defendant is benefited by a refusal to enforce an illegal contract, if such fact should appear, would not afford any reason for enforcing the illegal contract. (*Dillon* v. *Allen,* 46 Iowa, 299; 26 Am. Rep. 145; *Woods* v. *Armstrong,* 54 Ala. 150; 25 Am. Rep. 671, and n., 674.) In the event of Casey and Largey not being *in pari delicto* with plaintiffs, then plaintiffs could recover the property before it had been delivered to Boyce, or if notice had been given defendants not to deliver before an actual delivery had taken place. In such a case Casey and Largey would occupy the relative position between plaintiffs and Boyce that a stakeholder does between the parties making a wager. (Note to *Downs* v. *Quarles,* 12 Am. Dec. 339; *Jones* v. *Jones,* 6 Conn. 111; 16 Am. Rep. 37.) But no notice was ever given not to deliver, and all the lumber for the price of which suit is brought was delivered to Boyce upon its arrival in Butte.

*Forbis & Forbis,* for Respondents.

Defendants attempt to take advantage of their own wrong, for they received and used plaintiffs' lumber, and then sought to avoid paying for it by pleading their own turpitude. If plaintiff Purtle and defendant Casey ever entered into the scheme testified to by Casey, then the deliberate purpose was to delay and defraud the creditors of Boyce, and neither party to it will be heard to prove it in his own defense, and it will be binding as between the parties, and void only as to the creditors sought to be injured. (*Holliday* v. *Ward,* 19 Pa. St. 485; 57 Am. Dec. 671; *Harvey* v. *Varney,* 98 Mass. 118; *Butler* v. *Moore,* 73 Me. 151; 40 Am. Rep. 348; *Clemens* v. *Clemens,* 28 Wis. 637; 9 Am. Rep. 520; *Springer* v. *Drosch,* 32 Ind. 486; 2 Am. Rep. 356; *Davis* v. *Mitchell,* 34 Cal. 81.) No man shall set up his own iniquity as a defense any more than as a cause of action. (*Lord Mansfield's Case,* 1 Bro. C. C. 547.) The plaintiffs have established their case. They have proved a valid claim

against defendants, and that defendants received and enjoyed full value and consideration for the claim made against them. Plaintiffs' case is clean, and there appears in their showing no semblance of an illegal or fraudulent transaction. This is all the law requires of them, and the defendants cannot defeat such a claim by attempting to smirch it with their own soiled hands. (*Evans* v. *Dravo*, 24 Pa. St. 62; 62 Am. Dec. 359.)

De Witt, J. — As observed in the statement of the case, no point is now made upon any alleged insufficiency of the evidence to justify the verdict.

The complaint of the appellants is that, under the issues and the evidence, the instruction of the court as to fraud was error.

It is not suggested anywhere in the case that any fraud was attempted upon creditors of the defendants, nor upon creditors of the plaintiffs, nor upon any one who is in any way connected with this contention, either of record or in interest. If it is attempted to be construed from the evidence that any fraud was contemplated against any one, the supposititious victim was the supposititious creditor of W. A. Boyce, a third person.

Let it be noticed that the existence of a fraud was invoked against the defendants. Plaintiffs did not plead anything of this sort, and its existence they vigorously denied in their evidence.

Defendants did not offer to prove any such facts in defense, as the instruction suggests. And Casey denies in terms that any fraud or wrong against the creditors of Boyce was intended or committed. Of course, such denial would be of small moment if his acts belied his words, however solemn they might be; and the matter of fraud was properly a subject of inquiry.

But regard Casey's acts. Remember, in the first place, that plaintiff Purtle, to whom, and not to the defendants, the objectionable instruction would be a benefit, denies that he gave as a reason of his desiring to bill the lumber to Casey that he wished to avoid attaching creditors of Boyce. Now, Casey testifies that Purtle did make this suggestion as to the Montana Improvement Company, a supposed creditor of Boyce. Upon the Montana Improvement Company being mentioned, Casey declined to make the arrangement, which he says Purtle proposed. Casey said that if he were garnished under those

circumstances he would answer the facts. He would have nothing to do with having the lumber billed to him until he sent for Boyce, and ascertained from him that it did not appear that the Montana Improvement Company was a creditor of Boyce. No other alleged creditor of Boyce was mentioned in this connection. Having taken all these pains, having ascertained all these facts, on this understanding of the situation, Casey consented that plaintiffs might ship the lumber in his name. This testimony of Casey stands wholly undenied. Such conduct does not look like contemplated or consummated fraud.

But respondents may say, if this transaction was not a fraud, why was the lumber billed to Casey? The answer is found in their own mouths. Because Casey and Largey were the purchasers of the lumber, as plaintiffs allege and testify and seek to establish. If that be true, the phantom of fraud dissolves before the light of plaintiffs' own pleading and testimony.

On the other hand, if it be true, as defendants allege and testify, that they were not the purchasers, but allowed plaintiffs, at their own request, to ship the lumber in the name of Casey, and there were no threatening creditors of Boyce of whom defendants had any knowledge in this connection; that they made diligent inquiry upon that point, and found that the only concern supposed to be a creditor did not appear to be such, and Casey said to Purtle that he would answer the facts upon a garnishment,—it occurs to us that the fraud conjured up in this case is a decidedly unsubstantial fabric.

The issue in the case was squarely made. It was an allegation of sale and delivery on one side and a denial on the other. The evidence was as squarely contradictory as the issue. The plaintiffs did not plead or seek to prove or rely upon any fraud. The defendants repudiated its suggestion, and their testimony as to their acts did not tend to fix upon them any fraud contemplated or enacted.

The instruction of the court complained of was severely adverse to the defendants. It tended to prejudice them with the jury. It was unauthorized by the evidence, and for that reason the judgment is reversed and the cause remanded.

*Reversed.*

BLAKE, C. J., and HARWOOD, J., concur.